UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00116-HBB

**MICHELLE BUNCH RICHARDSON**             **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**             **DEFENDANT**

## MEMORANDUM, OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Plaintiff Michelle Bunch Richardson seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 16) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9). By Order entered September 21, 2016 (DN 10), the parties were notified that this Court would not hold oral arguments unless the parties submitted a written request, and the request were granted. No party filed such a request.

## FINDINGS OF FACT

Plaintiff filed an application for Supplement Security Income and Disability Insurance benefits on January 7, 2013 (Tr. 230, 233).  Plaintiff alleged that she became disabled on December 1, 2011 as a result of:

1. Osteoprosis
2. Osteoporosis with severe, chronic pain
3. Osteoarthritis
4. Back disorders
5. Migraine Headaches, hearing problems
6. Acid Reflux
7. Esophageal disorders
8. Sleep problems
9. Auto-immune disorder
10. Depression and anxiety, emotional problems
11. Poor concentration, focus, and memory

(Tr. 230, 233, 279).  Administrative Law Judge Christopher Dillon conducted a video hearing on September 8, 2014 from Baltimore, Maryland.  Plaintiff was present in Bowling Green, Kentucky and represented by Charles Richard Burchett.  Also present and testifying was Joey Kilpatrick, vocational expert (Tr. 46).

In a decision dated February 27, 2015, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 17-39).  At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity

since December 1, 2011, the alleged onset date (Tr. 23). At the second step, the ALJ determined that Plaintiff's low spine disorder, arthritis, osteoporosis, migraine headaches, left knee disorder, complex regional pain syndrome (RSD), affective disorder, and anxiety-related disorder are "severe" impairments within the meaning of the regulations (Tr. 23). Also at the second step, the ALJ determined that Plaintiff's bilateral hearing loss and sleep apnea are "non-severe" impairments within the meaning of the regulations (Tr. 23). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 24).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of sedentary work (Tr. 26). More specifically, the ALJ found that Plaintiff has the following additional non-exertional limitations:

> [O]ccasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling. The claimant is precluded from climbing ladders, ropes and scaffolds, operating foot controls and should have no exposure to hazards such as moving machinery and unprotected heights. The claimant should have no more than a moderate level of noise exposure as defined in the Dictionary of Occupational Title's Selected Characteristics of Occupations and no more than occasional exposure to temperature extremes, such as heat and cold. The claimant is limited to performing simple, routine, repetitive tasks and should have no more than occasional interaction with supervisors, coworkers and the public.

(Tr. 26). The ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 32). Notably, this determination resulted from the ALJ's conclusion that the record did not contain adequately developed information to make a finding regarding Plaintiff's past relevant work, but the lack of information was irrelevant because all medical guidelines would

nonetheless counsel a finding of not disabled given the Plaintiff's age, education, and residual functional capacity (Id.).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 32-33). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 34). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from December 1, 2011 through the date of the decision (Tr. 34).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 11-13). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.

4

1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which
>
> can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. For the reasons set forth below, the undersigned concludes that the Commissioner's decision was not supported by substantial evidence and remands this case for additional consideration by the ALJ.

A. ASSESSMENT OF FIBROMYALGIA

Plaintiff argues the ALJ erred at step two of the sequential evaluation process by failing to consider fibromyalgia when assessing Plaintiff's severe impairments (DN 13 pp. 2-3). Plaintiff notes she was diagnosed with fibromyalgia by a rheumatologist on June 26, 2016 (Id.

(citing Tr. 716)). Plaintiff maintains that the ALJ's failure to discuss fibromyalgia in his analysis at step two must result in a decision that is not supported by substantial evidence.

Defendant responds that Plaintiff's diagnosis of fibromyalgia does not comport with the requirements of SSR 12-2p (DN 16 at pp. 4-6). Specifically, Defendant argues the diagnosis does not reflect that the diagnosing rheumatologist conducted a review of Plaintiff's medical history (DN 16 at pp. 4-5). Defendant also argues that the diagnosis is not consistent with either the 1990 American College of Rheumatology Criteria or the 2010 ACR Preliminary Diagnostic Criteria (DN 16 at p. 5). Finally, Defendant contends Plaintiff's claim is somehow affected by the fact that her attorney did not mention fibromyalgia at the administrative hearing. Notably, Defendant does not develop this argument, explain how it impacts this Court's review, or offer any legal citation to clarify the argument.

The Social Security Administration has promulgated a rule addressing how an administrative law judge should assess a diagnosis of fibromyalgia when making a determination of disability. SSR 12-2p. The rule sets out how fibromyalgia should be viewed in the overall five step sequential evaluation process. It states:

> As with any adult claim for disability benefits, we use a 5-step sequential evaluation process to determine whether an adult with an MDI of FM is disabled.
>
> A. At step 1, we consider the person's work activity. If a person with FM is doing substantial gainful activity, we find that he or she is not disabled.
>
> B. At step 2, we consider whether the person has a "severe" MDI(s). If we find that the person has an MDI that could reasonably be expected to produce the pain or other symptoms the person alleges, we will consider those symptom(s) in deciding whether the person's impairment(s) is severe. If the person's pain

> or other symptoms cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities, we will find that the person has a severe impairment(s).[20]
>
> C. At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.
>
> D. Residual Functional Capacity (RFC) assessment: In our regulations and SSR 96-8p,[21] we explain that we assess a person's RFC when the person's impairment(s) does not meet or equal a listed impairment. We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are "not severe." For a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have "bad days and good days."
>
> E. At steps 4 and 5, we use our RFC assessment to determine whether the person is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5). If the person is able to do any past relevant work, we find that he or she is not disabled. If the person is not able to do any past relevant work or does not have such work experience, we determine whether he or she can do any other work. The usual vocational considerations apply.

SSR 12-2p 2012 WL 3104869, at *5-6 (July 25, 2012).

Thus, where there is a diagnosis, an ALJ should consider fibromyalgia throughout the evaluation process. But this leaves open the question of how an ALJ should determine whether

fibromyalgia constitutes a medically determinable impairment. Defendant ignores key aspects of the rule in its recitation of the criteria that an ALJ should look for when assessing a diagnosis. The rule goes on to state:

> C. When There Is Insufficient Evidence for Us To Determine Whether the Person Has an MDI of FM or Is Disabled
>
> 1. We may take one or more actions to try to resolve the insufficiency:
>
> a. We may recontact the person's treating or other source(s) to see if the information we need is available;
>
> b. We may request additional existing records;
>
> c. We may ask the person or others for more information; or
>
> d. If the evidence is still insufficient to determine whether the person has an MDI of FM or is disabled despite our efforts to obtain additional evidence, we may make a determination or decision based on the evidence we have.

Id. at *4.

Therefore, if the ALJ was unsatisfied with the single diagnosis of fibromyalgia, he should have conducted the additional steps set forth above. But the most glaring omission here is the ALJ's failure to address the fibromyalgia diagnosis at all. The administrative decision does not even contain the word fibromyalgia, let alone a discussion of the Plaintiff's diagnosis. The Defendant has offered no defense of this omission, instead constructing an argument that resembles the type of analysis that is conspicuously absent from the ALJ's decision. It is the duty of the ALJ to fully develop the record. Johnson v. Sec'y of Health and Human Servs., 794 F.2d 1106, 1111 (6th Cir. 1986). The ALJ has an "inquisitorial duty" to seek clarification on unclear factual matters. Wright-Hines v. Comm'r of Soc. Sec., 597 F.3d 392, 396 (6th Cir.

2010). Here, the undersigned does not know whether the diagnosis of fibromyalgia was unclear or not because the ALJ offered no discussion of the matter. This failure to develop the record warrants remand. On remand, the ALJ should assess the 2013 diagnosis of fibromyalgia pursuant to SSR 12-2p, meaning that if the single diagnosis is insufficient to make a determination, the ALJ should request additional evidence to better develop the record.

## B. PLAINTIFF'S REMAINING ARGUMENTS

Because the undersigned has remanded this case for the reasons stated above, there is no need to analyze Plaintiff's remaining arguments.

## C. SENTENCE FOUR REMAND

Sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand. Under sentence four, the court makes a final judgment (e.g., affirming, reversing, or modifying the final decision of the Commissioner) and remands the case to the Commissioner with instructions to consider additional evidence and/or conduct additional proceedings to remedy a defect in the original proceedings. Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994). Here, for the reasons expressed above, such remand is appropriate.

## **ORDER**

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are not supported by substantial evidence, and it is ordered that judgment be granted for the Plaintiff and the case remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Copies:	Counsel